IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JULIE MORROW,

    Plaintiff,                              Case No.

v.                                                          Judge
                                                              JURY DEMAND

**CIGNA HEALTH AND LIFE
INSURANCE CO.**,

    Defendant.
_____/

## COMPLAINT

      Plaintiff Julie Morrow was employed by Defendant Cigna Health and Life Insurance Co. ("Cigna") for over twenty years. During her employment Ms. Morrow suffered from an autoimmune disorder, diabetes, depression, and Long Covid. Ms. Morrow requested a leave of absence to seek treatment for her disabilities, as well as accommodations when she returned to work. These accommodations included one day of leave twice per month for incapacity. Cigna approved Ms. Morrow's accommodation requests. However, upon her return to work, Ms. Morrow requested to use one of her incapacity days and informed Cigna that her provider had sent Cigna updated accommodation documents. Cigna terminated Ms. Morrow the very next day, via email, in retaliation for her request for accommodation, use of one of her incapacity days, and in retaliation for her previous use of FMLA. During her employment, Ms. Morrow also experienced discrimination on the basis of her age. Thus, Ms. Morrow brings claims of discrimination, retaliation and failure to accommodate under the Americans with Disabilities Act ("ADAAAA"), the Tennessee Disability Act ("TDA"), the Age Discrimination in Employment Act ("ADEA"),

1

and the Family and Medical Leave Act ("FMLA") and Tennessee Human Rights Act ("THRA"), T.C.A. § 4-21-101 *et seq.*.

## PARTIES

1. Julie Morrow ("Ms. Morrow") is a citizen and resident of Maury County, Tennessee, and a former employee of Defendant. Plaintiff worked remotely for Defendant whose local office was located in Franklin, Tennessee.

2. Defendant Cigna Healthcare ("Cigna") is a Connecticut corporation with its principal office at 900 Cottage Grove Road, Bloomfield, Connecticut 06002-2920. Cigna operates a location in Nashville, Tennessee. Its registered agent for service of process is C T Corporation System, 300 Montvue Road, Knoxville, TN 37919-5546. At all relevant times, Defendant has been an employer as defined by FMLA, ADA, ADEA, and THRA.

3. Plaintiff is a qualified individual with a disability under 29 C.F.R. § 1630.2(g) and (h)(1).

4. At all times material to this action, based on information and belief, Defendant has employed 50 or more employees for each working day during each of 20 or more calendar workweeks in 2021 and 2022 and is an "employer" as defined by the FMLA, 29 U.S.C. § 2611 (4)(A).

5. At all times material to this action, Plaintiff was an "eligible employee" under the FMLA pursuant to 29 U.S.C. § 2611(2) and 29 C.F.R. § 825.110.

## JURISDICTION AND VENUE

6. This is an action for unlawful employment practices brought under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA") (Count I and II); and the Tennessee Disability Act, T.C.A. § 8-50-103

("TDA") (Count III); and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA") (Count IV), and Age Discrimination in Employment Act 29 U.S.C. § 621, et seq. ("ADEA") (Count V) and Tennessee Human Rights Act ("THRA"), T.C.A. § 4-21-101 *et seq.* (Count VI).

7. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

8. Plaintiff complies with all conditions precedent to the filing of her claims pursuant to 42 U.S.C. § 12101 *et. seq,* to wit: a charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment practice; the EEOC issued Plaintiff a notice of Right to Sue and this action was commenced within 90 days of receipt of the EEOC's Notice of Right to Sue.

**FACTS**

9. Plaintiff, Julie Morrow, worked for Defendant Cigna from January 2000, until her termination on October 4, 2022.

10. Ms. Morrow was an Operating Effectiveness Lead Analyst for Provider Operations.

11. Ms. Morrow is 64 years old.

12. Ms. Morrow is a qualified individual with a disability under 29 C.F.R. § 1630.2(h)(1) and (2). In particular, she has been diagnosed with Behcets, an auto immune disorder, and interstitial cystitis, that causes severe headaches, ulcers, memory issues, and confusion.

13. During her employment with Defendant, Ms. Morrow also suffered from diabetes, depression, breast cancer in 2019, and Long Covid starting in 2021. Ms. Morrow's Long Covid symptoms included constant headaches, loss of smell, and exacerbation of her auto-immune disorder.

14. Ms. Morrow's disabilities affect her major life activities, including, but not limited to, working, caring for oneself, sleeping, concentrating, thinking, learning, and interacting with others.

15. Mr. Morrow's disability can affect her major bodily systems including her immune system, neurological system, urinary tract, and brain.

16. Ms. Morrow's disabilities can cause extreme pain and are exacerbated by stress.

17. Ms. Morrow's manager, Susan Eccles, and her Team Lead, Nikki Bowen, were aware of her disabilities.

18. Ms. Morrow's job duties included ensuring quality control for Cigna's team in Jamaica, who outreached to providers for their correct data. Ms. Morrow performed audits to ensure all provider information was correct and required that Ms. Morrow often contact providers directly. This work was largely completed on computer programs and over the phone.

19. In September 2019, Ms. Morrow was on FMLA for two months to have a mastectomy and recover.

20. During 2021, Ms. Morrow had to take unpaid time off due to an ongoing family legal issue for which she was ultimately subpoenaed to court to address. Ms. Eccles was aware of the situation and allowed Ms. Morrow to take the unpaid time off.

21. Further, as a practice, if Ms. Morrow or her co-workers required days off for illness or any other reason, they would email these requested dates to Ms. Eccles. If approved, Ms. Morrow and her co-workers would then enter them into Cigna's Workday software.

22. In June 2021, Dustin Ayers and Ryan Robinson became Ms. Morrow's supervisor. Mr. Robinson reported to Mr. Ayers.

23. Mr. Ayers treated Ms. Morrow's younger coworkers more favorably than Ms. Morrow. He would assist them when they asked, and he would refuse to assist Ms. Morrow.

24. Mr. Ayers would also enter Ms. Morrow's time individually, while allowing all other employees to enter their own time. Mr. Ayers, exclusively micromanaged Ms. Morrow and none of the other employees on Ms. Morrow's team.

25. Nikki Bowen, Ms. Morrow's Team Lead, is in her thirties.

26. Ms. Bowen informed Ms. Morrow and her team that Mr. Robinson instructed that all employees email him with the dates that they have been approved for Paid Time Off.

27. Around June 2021, Mr. Ayers and Mr. Robinson met with Ms. Morrow to write her up for "behavioral issues" for not answering her phone while she was on approved time off.

28. Upon information and belief, other employees in Ms. Morrow's department were not disciplined for taking approved PTO or approved unpaid time off.

29. This was the first time Ms. Morrow had been written up throughout her entire employment history with Cigna.

30. While out on approved time off related to the family legal issue, Mr. Robinson contacted Ms. Morrow about her kidney infection, for which she was out for half of a day the week before, which was related to her disability.

31. Mr. Ayers then reprimanded Ms. Morrow for not answering her phone on June 11, 2023 when she was out of the office on approved leave. Ms. Morrow explained that she was in court on a family matter, pursuant to the request for time off that she had previously been approved for.

32. Mr. Ayers said she needed to be available to her managers *at any time* for work issues even while she was on approved leave.

5

33. During this meeting Mr. Ayers stated that it was Cigna policy that requested PTO be entered into Workday and to then follow up via email.

34. Ms. Morrow explained that she had contacted Mr. Robinson via email regarding her approved days off as requested, but Mr. Ayers and Mr. Robinson refused to listen.

35. Mr. Ayers stated that Ms. Morrow could not have any time off for any days she was subpoenaed to court, and she would never have any unpaid time off approved.

36. When Ms. Morrow asked how long this write-up would remain on her record, Mr. Ayers stated indefinitely, countrary to Defendant's disciplinary policy.

37. Mr. Ayers also required that Ms. Morrow provide a letter from the court verifying her court attendance, in addition to the subpoena she had already submitted to Cigna.

38. Mr. Robinson also stated that regardless of what Ms. Morrow's prior supervisor, Ms. Eccles, informed Ms. Morrow regarding requesting time off, Ms. Morrow should have known she needed to email Mr. Robinson directly regarding requested time off.

39. Ms. Morrow requested that this meeting be recorded. At the end of the meeting, when Ms. Morrow requested a copy of the recording, Mr. Ayers said he would not provide her with a copy because he did not want to give her information to use against him.

40. Mr. Ayers then contacted the Victim's Advocate Coordinator to confirm directly that Ms. Morrow was subpoenaed to court.

41. It was only after Ms. Morrow was written up that Mr. Robinson sent an email to her team about what the new expectations were going to be regarding requesting Paid Time Off.

42. However, Mr. Robinson had told Ms. Bowen that employees would continue to put in paid time off requests as they always had with Ms. Eccles.

43. Ms. Bowen communicated this to the team, including Ms. Morrow.

44. Mr. Ayers and Mr. Robinson were so aggressive during this meeting that Ms. Morrow had to go to the Emergency Room, where she was involuntarily admitted to Ascension St. Thomas Behavioral Unit. Ms. Morrow has a history of depression.

45. As a result, Ms. Morrow was hospitalized for four days in-patient and then was required to participate in outpatient rehabilitation for approximately three months.

46. From July 2021 until October 2021, Ms. Morrow received Short Term Disability and FMLA leave.

47. During this time, Mr. Ayers contacted Ms. Morrow's daughter asking invasive and personal medical questions. Ms. Morrow's daughter, Emily McCloy, informed him that Employee Relations stated that he needed to direct all communications to Employee Relations.

48. Mr. Ayers also contacted Ms. Morrow's physician's office directly to obtain Ms. Morrow's medical records without her permission.

49. Ms. Morrow returned to work in October 2021.

50. During this time, Ms. Morrow experienced some aphasia and memory issues.

51. In January 2022, Ms. Morrow contracted Covid-19. This caused her to suffer from Long Covid, and her auto-immune disorder symptoms were exacerbated.

52. Around February 2022, Ms. Morrow began to experience severe headaches, increased memory issues, and confusion. As the year progressed, so did Ms. Morrow symptoms.

53. Ms. Morrow met with her physician to discuss her COVID and the ulcers in her mouth caused by her autoimmune disorder. Ms. Morrow was then referred to the Digestive Disease Center because of the ulcers.

54. Between February and April 2022, Ms. Morrow began seeing physicians due to the ulcers and bleeding she experienced due to her autoimmune disorder.

55. The treatment for her autoimmune disorder worsened Ms. Morrow's diabetes.

56. As a result of the increase in Ms. Morrow's symptoms, in the Summer of 2022, Ms. Morrow applied for Short-Term Disability and Long-Term disability to address her health issues.

57. In July 2022, Ms. Morrow's daughter, Emily McCloy, informed Mr. Robinson that Ms. Morrow would need to take Short Term Disability and that Ms. McCloy had already started a claim.

58. Then Mr. Ayers contacted Ms. McCloy via text message requesting an expected return to work date, and Ms. McCloy responded that this information would be provided to him via the Short-Term Disability provider, which was standard practice.

59. Throughout this time, Mr. Ayers would regularly tell Ms. Morrow that she had exhausted her FMLA, that her job was in danger, and if she did not get her Short-Term Disability, Long Term Disability, and ADA paperwork approved she would be fired.

60. Around August 2022, Ms. Morrow applied for Long-Term Disability.

61. In the beginning September 2022, Ms. Morrow further requested accommodations for continuous leave through October 2, 2022; and upon her return, time off for medical treatments up to four hours, twice weekly; and medical leave for one day, twice monthly, for incapacity, beginning October 3, 2022.

62. Ms. Morrow sent these requests to Mr. Ayers.

63. During this time, Mr. Robinson was replaced by Pascia Smith.

64. On September 14, 2022, Ms. Morrow received approval for all requested accommodation from Mr. Ayers and Human Resources.

65. In this email, Ms. Morrow was notified that her position would be protected, and Cigna would not begin the process of filling her role until October 3, 2022.

66. On October 3, 2022, Ms. Morrow emailed Mr. Ayers, Employee Relations, and Ms. Smith that she needed to use her incapacity day, as she was too ill to work due to her disability and her physician wanted to conduct further emergency imaging that afternoon, specifically an MRI.

67. The MRI was scheduled for October 3, 2022.

68. Ms. Morrow also notified Mr. Ayers and Ms. Smith that her physician had completed updated ADA Accommodation Forms and the Employee Relations department should be receiving them in one to two days.

69. These documents requested that her accommodation leave be extended until October 21, 2022.

70. Cigna did not engage in any interactive conversation related to Ms. Morrow's updated ADA accommodation request.

71. Instead, the very next day, on October 4, 2022, Mr. Ayers terminated Ms. Morrow via email. In an attached letter, Cigna informed Ms. Morrow that her position began being filled in August 2022 and that Cigna had only maintained her employment status for Short-Term Disability and Long-Term Disability purposes.

72. Mr. Ayers terminated Ms. Morrow for exhaustion of her ADA accommodation leave and denial of her Short-Term and Long-Term disability.

73. However, Mr. Ayers falsely stated that Ms. Morrow's Short-Term Disability and Long-Term Disability had been denied. Instead, both claims were pending, which Mr. Ayers was aware of.

74. As a result of the stress of her termination and loss of medical benefits, Ms. Morrow suffered a massive flare-up of her disability and had to be hospitalized.

75. On the same day, Mr. Ayers informed Ms. Morrow that she could still pursue her Long-Term Disability because it was still pending, but she still remained terminated.

76. Ms. Morrow attempted to contact Dronda Repp, Human Resources, multiple times but never received a response. Cigna later approved Ms. Morrow for her Long-Term disability, but due to her termination she did not have access to any of her benefits.

77. According to policy, Ms. Morrow is supposed to be able to have access to her life insurance and health insurance but has not.

78. Ms. Morrow and Ms. McCloy were informed that if they paid a premium Ms. Morrow's health insurance would be reinstated. Ms. Morrow paid this fee; however Ms. Morrow's insurance was never reinstated.

79. Ms. Morrow and Ms. McCloy contacted Employee Relations repeatedly regarding this issue and were never contacted back.

80. As a result, Ms. Morrow could not receive vital medical care to treat her disabilities, exacerbating her condition.

81. Due to Cigna's discriminatory treatment, Ms. Morrow has suffered significant emotional distress.

## Count I
## Violation of ADA/ADAAA- Disability Discrimination

82. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

83. Pursuant to the ADAAA, an individual is considered to have a disability if she has a physical impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such impairment.

84. Plaintiff was a qualified individual with a disability as she had impairments that affected her immune system, neurological systems, nervous system, and mental health and

substantially limits her in one or more major life activities, including working, caring for oneself, sleeping, concentrating, thinking, learning, and interacting with others.

85. Plaintiff was discriminated against and eventually terminated because of her disability and request for reasonable accommodation.

86. Plaintiff requested a reasonable accommodation of continuous leave from September 2022 through October 2, 2022; time off for medical treatments up to four hours, twice weekly; and medical leave for one day, twice monthly, for incapacity, beginning October 3, 2022.

87. When Plaintiff requested to use one of her accommodation days for incapacity, she was terminated the next day.

88. Plaintiff could perform the essential functions of her job with a reasonable accommodation.

89. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

90. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

**Count II**
**Violation of ADAAA- Retaliation**

91. Plaintiff restates and incorporates herein the foregoing paragraphs.

92. It is federal public policy and law under the Americans with Disabilities Act that employees must be able to exercise their rights without fear of reprisal or penalty from an employer.

93. Plaintiff engaged in protected activity under the ADA when she requested accommodations of continuous leave from September 2022 through October 2, 2022; time off for medical treatments up to four hours, twice weekly; and medical leave for one day, twice monthly, for incapacity, beginning October 3, 2022.

94. Plaintiff also engaged in protected activity when she requested to use one of her accommodation days for her disability.

95. Such actions by the Plaintiff are statutorily protected activities under ADAAA.

96. Plaintiff was terminated on October 4, 2022.

97. In violation of the ADAAA, Defendant retaliated against Plaintiff by refusing to engage in the interactive process when she attempted to use one of her medical leave days due to her disability and notified Defendant that she was providing updated ADA Accommodation paperwork. Defendant terminated Plaintiff after she used an accommodation for leave due to her disability and when she requested to use her approved one day of incapacity leave.

98. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

99. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count III
## Violation of TDA- Disability Discrimination

100. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

101. Pursuant to the TDA, an individual is considered to have a disability if she or he has a physical or mental impairment that substantially limits one or more major life activities.

102. Plaintiff was a qualified individual with a disability.

103. Plaintiff was discriminated against and eventually terminated because of her disability.

104. Plaintiff's supervisors were aware of her disability and threatened Plaintiff with termination as a result of her disability.

105. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

106. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count IV
## Violation of FMLA

107. Plaintiff restates and incorporates herein the foregoing paragraphs.

108. Defendant retaliated against Plaintiff for taking FMLA protected leave.

109. At all times material to this action, Plaintiff was an eligible employee under the FMLA, 29 U.S.C. § 2611(2)(a)(i)(ii).

110. Defendant is an eligible employer under the FMLA, 29 U.S.C. § 2611(4)(A)(i).

111. Plaintiff was entitled to receive FMLA leave to care for her own serious health condition.

112. Defendant retaliated against Plaintiff when it terminated her after she took FMLA leave.

113. Defendant subjected Plaintiff to disparate terms and conditions of employment after she requested and took FMLA.

114. Defendant's actions constitute retaliation violations of the FMLA.

115. Defendant's conduct was a motivating factor in adverse employment actions against Plaintiff.

116. Defendant's conduct harmed and caused damage to Plaintiff.

117. As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, liquidated damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

### COUNT V
### Age Discrimination in Violation of the ADEA, 29 U.S.C. §§ 621, *et seq*.

118. Plaintiff restates and incorporates herein the foregoing paragraphs.

119. It is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." ADEA, 29 U.S.C. § 623(a)(1).

120. It is also unlawful for an employer "to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. § 623 (a), (a)(2).

121. Ms. Morrow is a member of a protected class as an employee older than forty years of age and was an employee of Cigna before Cigna unlawfully terminated her.

122. Cigna discriminated against Plaintiff with respect to Mr. Robinson's and Mr. Ayers' treatment of Ms. Morrow as compared to her younger counterparts. Because of Ms. Morrow's age, Defendant took adverse employment actions against her, including, *inter alia*, disciplinary action and terminating her.

123. Further, these adverse employment actions were designed to limit, segregate, or

classify Plaintiff in such a way that she was deprived of individual employment opportunities and her status as an employee was adversely affected.

124. Cigna's adverse employment actions against Plaintiff were in direct violation of the ADEA, 29 U.S.C. §§ 621, *et seq*.

125. Age is not a bona fide occupational qualification reasonably necessary for the normal operation of Cigna or Ms. Morrow's roles in Cigna.

126. As a result of Cigna's discrimination, Plaintiff has suffered, and will continue to suffer, harm. Ms. Morrow is entitled to recover her damages, including, but not limited to, lost wages and benefits, liquidated damages, reinstatement and/or front pay and benefits, pre-judgment and post-judgment interest, attorney fees and costs, and any such other legal and equitable relief as the Court may deem just and proper.

## COUNT VI
## Age Discrimination in Violation of the THRA

127. Plaintiff restates and incorporates herein the foregoing paragraphs.

128. It is unlawful for an employer discriminate on the basis of age.

129. Ms. Morrow is older than forty years of age and was an employee of Cigna before Cigna unlawfully terminated her.

130. Cigna discriminated against Plaintiff with respect to Mr. Robinson's and Mr. Ayers' treatment of Ms. Morrow as compared to her younger counterparts. Because of Ms. Morrow's age, Defendant took adverse employment actions against her, including, *inter alia*, disciplinary action and terminating her.

131. Further, these adverse employment actions were designed to limit, segregate, or classify Plaintiff in such a way that she was deprived of individual employment opportunities and her status as an employee was adversely affected.

132. Cigna's adverse employment actions against Plaintiff were in direct violation of the THRA.

133. As a result of Cigna's discrimination, Plaintiff has suffered, and will continue to suffer, harm. Ms. Morrow is entitled to recover her damages, including, but not limited to, lost wages and benefits, reinstatement and/or front pay and benefits, non-economic damages, pre-judgment and post-judgment interest, attorney fees and costs, and any such other legal and equitable relief as the Court may deem just and proper.

## RELIEF REQUESTED

Plaintiff respectfully requests:

1. A jury trial;

2. Back pay and damages for lost benefits, insurance and reimbursement for medical costs due to the loss of her insurance;

3. Actual damages incurred as a result of lost pay or benefits;

4. Reinstatement and/or front pay;

5. Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

6. Liquidated damages;

7. Punitive damages;

8. Attorneys' fees and expenses;

9. Prejudgment interest and, if applicable, post-judgment interest; and

10. Such other and further legal or equitable relief to which she may be entitled under the ADAAA, the TDA, FMLA, ADEA, and THRA.

Respectfully submitted,

16

Case 3:23-cv-01019   Document 1   Filed 09/28/23   Page 16 of 17 PageID #: 16

/s Heather Moore Collins
Heather Moore Collins BPR # 026099
Ashley Shoemaker Walter BPR# 037651
HMC CIVIL RIGHTS LAW, PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@hmccivilrights.com
ashley@hmccivilrights.com

*Attorneys for Plaintiff*